# IN THE COURT OF APPEALS OF IOWA

No. 19-1158
Filed September 25, 2019

**IN THE INTEREST OF F.K. and F.K.,**
**Minor Children,**

**F.K., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Floyd County, Karen Kaufman Salic, District Associate Judge.

A mother appeals the termination of her parental rights to her two minor children. **AFFIRMED.**

Elizabeth A. Batey of Vickers Law Office, Greene, for appellant mother.

Thomas J. Miller, Attorney General, and Anna T. Stoeffler (until withdrawal) and Mary A. Triick, Assistant Attorneys General, for appellee State.

Cynthia Schuknecht of Noah, Smith, Schuknecht & Sloter, P.L.C., Charles City, guardian ad litem for minor children.

Considered by Potterfield, P.J., and Mullins and Greer, JJ.

**POTTERFIELD, Presiding Judge.**

A mother appeals the juvenile court order terminating her parental rights to her two minor children, F.K. and F.K.  The juvenile court terminated her parental rights under Iowa Code section 232.116(1)(e), (h), and (k) (2019).[1]  The mother argues the State has not met its burden to show by clear and convincing evidence that (1) the mother has "not maintained significant and meaningful contact" with the children under paragraph (e)(3); (2) the children could not be returned to her custody at the time of the termination hearing under paragraph (h)(4); and (3) the mother's "prognosis indicates that the child will not be able to be returned to the custody of the parent within a reasonable period of time" under paragraph (k)(3).  She further argues terminating her parental rights is not in the children's best interest and the juvenile court erred by refusing her request for a six-month extension rather than terminating her parental rights.

## I.  Factual History and Background Proceedings

At the time of the termination hearing, the older child was almost two and one-half years old and the younger child was almost one and one-half years old.  The mother and the children lived together with L.H., an unrelated adult man whom the mother later admitted was her significant other, and with whom the mother has been involved in domestic violence incidents on more than one occasion.

The mother has a long history of mental-health issues.  She is a person with lower cognitive ability and was temporarily under the guardianship of her

---

[1] The juvenile court also terminated the parental rights of the children's father under the same provisions.  The father does not appeal.

parents as an adult. She has been diagnosed with bipolar personality disorder, schizophrenia, attention-deficit hyperactivity disorder, and oppositional defiant disorder. She had five psychiatric hospitalizations between spring 2014 and spring 2015 and fled Iowa to avoid involuntary committal proceedings during that period. The mother also has a history of attempting or threatening to attempt to commit suicide. In March 2018, the Iowa Department of Human Services (DHS) became involved after the mother attempted suicide by drug overdose while the children were in her care. The mother limited the services to only Family Safety, Risk, and Permanency (FSRP) and psychiatry services, and then did not engage in the services offered.

The events leading to these proceedings occurred in July 2018. On July 20, the mother was committed for psychiatric hospitalization after she threatened to commit suicide by jumping into a river with one of the children. DHS removed the children from L.H.'s home where they were living with their mother and L.H. that same day after DHS staff smelled marijuana on them. The children were placed with their current foster parents, where they have remained.

The children were adjudicated children in need of assistance (CINA) in September 2018. The juvenile court ordered the mother to obtain a substance-abuse evaluation, participate in FSRP services, the Families Together program, and Crisis Intervention Services, and show that she provided adequate financial support and appropriate housing for the children. At first, the mother did not engage in any services. She did not participate in FSRP, Families Together, or Crisis Intervention Services. She missed most of the scheduled visits with the

children, did not get a substance abuse evaluation performed as requested, and was not receptive to suggested changes to her parenting.

The mother's participation in services improved by the December 2018 permanency hearing. She began attending substance-abuse and mental-health treatment and was regularly taking her psychiatric medications. She still refused to accept advice on changing her parenting, however, and often was not attentive or prepared during visits. During one visit, for example, the mother tried to feed the younger child a French fry, despite the child being less than a year old. DHS staff informed the mother the child could not eat the French fry, but the mother fed it to the child anyway, leading it to choke.

Between the CINA adjudication and the permanency hearing, the mother struggled to maintain employment and stable housing. She worked at a local factory, but by the time of the permanency hearing she was unemployed and receiving social security disability benefits. Her benefits were managed by L.H., who DHS believed was misusing them. The mother refused to name a different payee.

At the December 2018 permanency hearing, the mother was granted an additional six months to work toward regaining custody. But by the permanency review hearing in March 2019, the mother had not made much additional progress. She was more attentive to the children during her visits with them but still struggled to come prepared and to recognize their needs. She refused to sign the paperwork necessary to enroll the children in daycare. She only attended mental-health and substance-abuse treatment sporadically. She still had not participated in Families Together, and had only attended some of her

scheduled meetings with FSRP. The juvenile court determined the mother was unlikely to improve in the foreseeable future, and directed the State to petition for termination.

The termination hearing took place on June 20, 2019. By that time, the mother still had not shown she could take care of the children. She still came to many visits unprepared, and still cut almost all the visits short to take the children back to daycare. In the termination order, the juvenile court noted the mother "seems fixed on what she wants to do, regardless of the children's needs" during visits. She occasionally met with FSRP but still refused to change her parenting or work on issues such as budgeting. She maintained her relationship with L.H., and was involved in a series of domestic violence incidents in the days before the termination hearing, including the mother threatening suicide. The juvenile court terminated the mother's parental rights to both children under Iowa Code section 232.116(1)(e), (h) and (k), and the mother appealed.

## II. Standard of Review

We review termination proceedings de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). In our review, our fundamental concern is the best interests of the children at issue. *In re M.D.*, 921 N.W.2d 229, 232 (Iowa 2018).

## III. Discussion

### a. Statutory Grounds for Termination

The mother challenges each of the three grounds the juvenile court terminated her parental rights under. Because we conclude the State met its burden to show the children could not be returned to her custody at the time of the termination hearing under section 232.116(1)(h), it is unnecessary to address

her arguments as they relate to section 232.116(1)(e) and (k). *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012) ("When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record.").

Under section 232.116(1)(h), termination is warranted where (1) the child is three years of age or younger, (2) has been adjudicated a CINA, (3) has been removed from the parent's care for at least six of the previous twelve months, and (4) there is "clear and convincing evidence that the child cannot be returned to the custody" of the parent. The mother does not dispute that the State has met its burden of proof to establish the first three elements. She only argues the State has not met its burden of proof for the fourth element.

On our de novo review, we conclude the State has met its burden to show by clear and convincing evidence that the children could not have been returned to the mother's custody on the day of the termination hearing. *See In re L.M.*, 904 N.W.2d 835, 839 (Iowa 2017) (noting "at the present time" as used in section 232.116(1)(h)(4) refers to the time of the termination hearing). The record shows the mother does not have the means to provide for the children. At the time of the termination hearing, the mother had only recently become employed. She testified that she earned $10 per hour and worked between twenty-seven and thirty-six hours per week. The juvenile court did not believe the mother could provide for herself, let alone the children, and noted she now had less financial stability than when she had social security disability benefits, as well as food, housing, and medical assistance, which she no longer received. While on benefits, the mother routinely cut supervised visits with the children short so that

they could eat lunch at daycare, telling FSRP staff during one visit that she had run out of "food money." Despite her difficulties with money, the mother refused to engage FSRP services related to budgeting and money management.

Our conclusion is also supported by the fact the mother continues be in a relationship and live with L.H., despite denying both facts up until the termination hearing. *See, e.g.*, *In re T.S.*, No. 14-1517, 2015 WL 791698, at *8 (Iowa Ct. App. Feb. 25, 2015) (noting substance-abuse and domestic violence issues "alone are sufficient to support termination under paragraph (h)"); *In re A.R.C. III*, No. 13-0786, 2013 WL 3458222, at *5 (Iowa Ct. App. July 10, 2013) (terminating a parent's rights under section 232.116(1)(h) because domestic violence between the parents was "likely to cause substantial emotional and psychological damage" to the child). The mother and L.H. have been involved in several domestic violence incidents throughout their relationship. During one of the incidents in the week before the termination hearing, the mother threatened to kill herself and burn down her and L.H.'s home. During another, L.H. had to be removed from the home. He later broke back in and had a disagreement with the mother over property. Neither the mother nor L.H. were arrested or charged in relation to these incidents, but the juvenile court noted the incidents demonstrated "clear instability that continued to exist," which prevented the children from being returned to the mother's custody. We agree and find the State has met its burden.

### b. Best Interest

Having determined the State has met its burden under Iowa Code section 232.116(1)(h), we must next consider whether termination of the mother's

parental rights to the children is in their best interest. *In re A.S.*, 906 N.W.2d 467, 473 (Iowa 2018) ("If we determine 'that a ground for termination has been established, then we determine whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights.'" (quoting *In re M.W.*, 876 N.W.2d 212, 219–20 (Iowa 2017))).

The children are both young, and need a parent who can provide them with a safe and stable home. Based on the mother's past performance, she has not shown that she can be that parent. *See A.B.*, 815 N.W.2d at 778 ("Insight for the determination of the child's long-range best interests can be gleaned from 'evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing.'" (quoting *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000))). As described above, the mother continues to struggle with mental-health issues and is still in a destructive and unhealthy relationship with L.H. The mother has not shown she can identify the children's needs, and has shown throughout these proceedings that she is unwilling to accept guidance from DHS or FSRP or change her practices.

The children have waited nearly a year for the mother to resolve her issues. She has not done so, and it is not in the children's best interest to make them wait for a permanent home any longer. *See In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) ("It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." (quoting *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010))); *see also A.B.*, 815 N.W.2d at 778 ("It is simply not in the best

interests of children to continue to keep them in temporary foster homes while the natural parents get their lives together." (quoting *In re C.K.*, 558 N.W.2d 170, 175 (Iowa 1997))). The children have formed a close bond with their foster parents, who provide a safe and nurturing home for them and have stated they are willing to adopt the children. *See* Iowa Code § 232.116(2)(b) (permitting the court to consider the extent a child has bonded with their foster parents when determining whether termination of parental rights is in the child's best interest). We conclude termination of the mother's parental rights is in the children's best interest.

### c. Six-Month Extension

Finally, the mother argues she should have been given a six-month extension to work toward reunification. Under Iowa Code section 232.104(2)(b), the court may authorize a six-month extension if "the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." As noted above, many issues the mother was asked to work on—her mental health, her housing and financial instability, her unhealthy relationship with L.H., and her inability to recognize the children's needs and care for them in an age-appropriate manner—have not been sufficiently addressed, despite already receiving one six-month extension. Based on her inability to resolve these issues in the time she has already been given, we conclude additional time is not warranted.

**AFFIRMED.**